FORD MOTOR CO. *v.* BARRY, ADMX.

(Decided December 19, 1928.)

*Mr. John S. Pratt,* and *Mr. E. J. Matz,* for plaintiff in error.

*Mr. C. A. Thatcher* and *Mr. C. A. Meck,* for defendant in error.

JUSTICE, J.   The action originated in the court of common pleas of Lucas county and it comes here on error to that court.

Elizabeth Barry, as administratrix of the estate of Bruce E. Barry, deceased, brought the action against the Ford Motor Company to recover damages for his death, caused, as she claimed, by the company's negligence.

The alleged negligence was: Failure of the Ford Motor Company to raise a certain derailer.

Ford Motor Company denied any negligence on its part, averred that the deceased came to his death solely through his own negligence, and pleaded a settlement of the cause of action with a joint tort-feasor.

The claims of the motor company were denied by the administratrix.

Upon trial, a verdict was returned for the administratrix. A motion for a new trial was overruled and a judgment rendered on the verdict. The reversal of that judgment is the object of this proceeding.

Five specifications of error are presented:

First. Overruling of the motion of the Ford Motor Company for judgment in its favor, at the close of all the evidence.

Second. Verdict not sustained by sufficient evidence.

Third. Admission and exclusion of testimony.

Fourth. Refusal of trial court to give certain written requests before argument.

Fifth. The charge.

Of these in their order:

Bruce E. Barry was a yard conductor of the Detroit Terminal Railroad Company at Detroit, Mich. A number of the tracks of said railroad, including track No. 14, led into the plant of the Ford Motor

Company. On track No. 14 was a derailing device, installed and exclusively operated by the motor company. The derailer was equipped with a lamp, which showed red when closed, and green when opened. Barry was well acquainted with the railroad yards and thoroughly familiar with the location and operation of the derailer.

On the night of September 27, 1923, Barry was directed to deliver a string of cars to the plant of the motor company. He notified the motor company that he was "coming in on track No. 14." He was told by the motor company to proceed with his train of cars. A service man of the motor company was ordered to raise the derailer. The derailer was not raised. The lead car, upon which Barry was riding, ran into the derailer, and it, together with four or five other cars, left the tracks. Barry was thrown from the car and instantly killed.

A great conflict existed in the oral testimony as to the movement of the train after Barry was told to proceed; the conduct of the service man after he was told to raise the derailer; and the view Barry had of the lamp at the derailer. Witnesses called on behalf of the administratrix testified that at no time did the train move faster than 6 miles an hour; that it took the train 30 minutes to reach the derailer; and that Barry, by reason of curves in track No. 14, and the presence of buildings adjacent to said track, could not see the lamp at the derailer until he was two or three car lengths from it. On the other hand, witnesses called by the motor company told the court and jury that the train was operated at a speed of not less than 20 miles an hour; that it took the train not less than 6 minutes to arrive at

the derailer; that the service man acted promptly in endeavoring to raise the derailer; and that Barry had an unobstructed view of the lamp at the derailer for a distance of at least 500 feet.

There are other facts in this case. Some of them we will hereafter mention. As to the alleged negligence of the motor company, the deceased, or of either or both of them, the foregoing facts are, in our opinion, the salient and controlling ones in this case.

It is urged by counsel for the motor company, as their first claim of error, that the verdict is contrary to law in that it is not sustained by any evidence, and that, therefore, the motion for a judgment in favor of the motor company should have been sustained.

The gist of the action was negligence. Manifestly the administratrix, in order to recover, had to establish the claimed negligence. If the motor company was not negligent, of course no recovery could be had against it. *Moran, Admx., v. Hines, Dir. Genl. of Rds.,* 115 Ohio St., 226, 152 N. E., 664. But how stands the evidence on this issuable fact? It is as heretofore stated, and, in our opinion, it clearly discloses that this contention is not tenable.

But it is insisted that the evidence of the administratrix raised, as a matter of law, a clear presumption of contributory negligence on the part of the deceased, which was not removed by any evidence, and that, therefore, the motion of the motor company for a directed verdict in its favor should have been sustained. With this contention we are not in accord.

It is true that the deceased ran his train into the

derailer at a time when the lamp showed red; but the circumstances under which he did so, as disclosed by the evidence on behalf of the administratrix, clearly tended to counterbalance the evidence giving rise to such a presumption. It therefore was a question for the jury to determine under proper instructions. Clearly the administratrix was not required to remove the presumption, but merely to counterbalance it. *Tresise* v. *Ashdown, Admr.*, 118 Ohio St., 307, 160 N. E., 898.

It is contended, however, by counsel for the motor company, as their second claim of error, that the verdict is not sustained by sufficient evidence. As to this claimed error we have but this to say: The jurors were the triers of the facts; it was for them to say whom they believed and whom they disbelieved; and we, as a reviewing court, ought not disturb their conclusions, as evidenced by the verdict, unless we find them to be clearly and manifestly against the weight of the evidence. *Dean* v. *King & Co.*, 22 Ohio St., 118, 134. We have applied the above-stated rule to the facts in this case and find and hold that this assignment of error is not well taken.

As to admission and rejection of testimony, the third claimed error, counsel for the motor company insist that the testimony of the custom in the railroad yards was not admissible because it was not shown that the deceased had any knowledge of what had occurred in said yard upon previous occasions. With this contention we do not agree. There is evidence tending to show that the deceased had been an employee of the Detroit Terminal Railroad Company for several months during the year 1922, and

was well acquainted with the railroad yards and the movements of the trains therein.

It will be neither interesting nor profitable to mention the other numerous rulings of the trial court on the testimony offered in this case. Suffice it to say, we have carefully examined all of them, and are unanimously of the opinion that no prejudicial error has intervened in the trial of this case in that respect.

Coming now to the fourth claimed error—the refusal of the trial court to give certain written requests before argument: The record discloses that the requests were written on separate sheets of paper, and separately numbered. Some of them were applicable to the facts in issue and correctly stated the law; others were not. The requests were submitted as an entirety, or as a series, and not separately. It was the duty of the trial court to either give or refuse the requests without change, modification, or comment. *Tuscarawas County Commrs.* v. *Swanson,* 7 Ohio App., 405. Inasmuch as some of them were not sound propositions of law pertaining to the issue or issues raised by the pleadings, and applicable to the proven facts in this case, and inasmuch as they were submitted to be given as an entirety, or as a series, and not separately, the trial court, in our opinion, committed no prejudicial error in refusing to give the requests in question. *Schatzinger Consolidated Realty Co.* v. *Stonehill,* 19 C. C. (N. S.), 403, 29 C. D., 587.

The last assignment of error relates to the charge. In its third defense the Ford Motor Company, in substance, averred that the injury and death of the deceased were directly and proximately caused by

the concurrent negligence of the Detroit Terminal Railroad Company and Ford Motor Company; that some time after the death of the deceased, but prior to the commencement of the action at bar, the administratrix brought an action against the Detroit Terminal Railroad Company to recover damages for the wrongful and negligent killing of said deceased; that a settlement of the cause of action was made by the administratrix with the railroad company, whereby she recovered the sum of $5,750 in full and complete satisfaction of all damages sustained by reason of the death of the deceased, but reserved her right of action against the Ford Motor Company; and that under the laws of the state of Michigan a release of a cause of action as against one of two or more joint tort-feasors operates as a release of all. There is evidence in the record tending to prove each and all of the essential elements of fact alleged in said third defense.

The trial court refused to submit the third defense to the jury under proper instructions. We quote from the charge: ''There is a third defense which refers to the effect of the payment made by the terminal company, which in the opinion of the court is not pertinent to any issue that is to be passed upon by the jury and which you will not consider at all in making up your verdict.'' This was wrong. The deceased was killed at Detroit, Michigan. The action at bar was therefore governed by the laws of that state. *Alexander* v. *Pennsylvania Co.,* 48 Ohio St., 623, 30 N. E., 69. The laws of Michigan gave to the administratrix the right to maintain an action for the alleged wrongful and negligent killing of the deceased. Section 12383

*et seq.* and Section 14577, Michigan Compiled Laws of 1915. But it was, and is, the law of Michigan that a release of a cause of action as against one of two or more joint tort-feasors operates as a release of all. *Moffit* v. *Endtz,* 232 Mich., 2, 204 N. W., 764.

However, it is insisted by counsel for the administratrix that the answers to certain interrogatories, submitted by the motor company and given by the trial court, cured any error committed by the trial court in not submitting the third defense. The interrogatories and answers thereto were as follows:

"Q. Was the accident resulting in the death of Bruce E. Barry on September 27, 1923, caused or contributed to directly or indirectly by the negligence of the deceased, Bruce E. Barry? A. No.

"Q. Was the accident resulting in the death of Bruce E. Barry on September 27, 1923, caused or contributed to directly and proximately by the negligence of a member of the crew operating the engine and string of cars? A. No."

Section 11447 of the General Code, so far as pertinent here, provides: "7. The court, after the argument is concluded, before proceeding with other business, shall charge the jury."

This section of the General Code has been construed by our Supreme Court in the case of *Baltimore & Ohio Rd. Co.* v. *Lockwood,* 72 Ohio St., 586, 74 N. E., 1071. In this case it was held: "In submitting a case to the jury, it is the duty of the court to separate and definitely state to the jury, the issues of fact made in the pleadings, accompanied by such instructions as to each issue as the nature of the case may require."

Obviously the trial court did not comply with the above-stated rule. It occurs to us that further comment is unnecessary. Clearly the trial court erred to the prejudice of the motor company in not submitting to the jury, under proper instructions, the third defense contained in its second amended answer.

Holding these views it follows that the judgment of the court of common pleas should be reversed, and the cause remanded.

*Judgment reversed and cause remanded.*

CROW, J., concurs.
HUGHES, J., concurs in the judgment.

HUGHES, J., concurring. I concur in the reversal of the judgment in this case for the following reasons:

The act of negligence on the part of the defendant, relied upon by the plaintiff in this case, was the claim that the defendant company failed to remove the derailer in time to permit the train upon which plaintiff's decedent was riding, to be run in over track 14.

It is clear from the pleadings and the evidence that the derailer was on the rail, and, as was well known to all parties concerned, was equipped with a red light to indicate its position on the rail and the danger of running a car over the rails at that point. It is true the evidence tends to show that decedent was informed by the defendant company that this derail would be removed for him to enter over track 14, but until that derail was removed the de-

fendant had, instead of a person waving down the train and notifying the crew of the danger they were approaching, this derail device standing up, with a red danger signal as a sentinel calling and beckoning to them to stop. This was the regular equipment of the defendant company and decedent had full knowledge thereof. There could be no act of negligence in permitting the derail to remain in position. Many situations might occur that would require the defendant company to retain the derail in position until those situations were cleared away before a train would be permitted to enter; and this notwithstanding defendant's declaration that it would remove the derail to permit the train to enter. I can see no act of negligence on the part of the defendant company in permitting this derail to remain in position.

The evidence in behalf of the plaintiff clearly raises a presumption of negligence upon the part of the decedent in permitting his train, which he had charge of and control over, to run over this derail while it was in position, with a red light of warning staring him in the face. There is no evidence in the record to remove this presumption of negligence upon his part.

The pleadings warranted submission to the jury the question of fact whether the settlement with one joint tort-feasor of a cause of action arising in the state of Michigan released the other joint tort-feasor. And the evidence clearly indicates that this was done by the plaintiff. Hence, under the laws of Michigan, as established by the evidence in this case, plaintiff has released all joint tort-feasors by her settlement with the terminal company in Toledo.

For these reasons, I concur in the reversal of the judgment.

Judges Crow, Hughes, and Justice, of the Third Appellate District, sitting in place of Judges Richards, Williams, and Lloyd, of the Sixth Appellate District.